# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| ALKIVIADES DAVID; FILMON TV LTD.; FILMON TV INC.; ALKI DAVID PRODUCTION INC.; HOLOGRAM USA; SWISSX.<br><br>*Plaintiff(s)*<br><br>-v-<br><br>THOMAS GIRARDI, ESQ; GLORIA ALLRED, ESQ.; LISA BLOOM; ESQ.; NATHAN GOLDBERG, ESQ.; RENEE MOCHKATEL ESQ.; DOLORES Y. LEAL ESQ.; LEAH WILSON; GAVIN NEWSOM; JOSEPH CHORA; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; ELIZABETH TAYLOR MAHIM KHAN; CHASITY JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC;.<br><br>*Defendant(s)* | **CIVIL RACKETEERING AND ANTITRUST COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

*"A lie doesn't become truth, wrong doesn't become right, and evil doesn't become good, just because it's accepted by a majority."*

*Booker T. Washington*

## JURISDICTION

Jurisdiction in this case is invoked onto the Court pursuant to provisions of 18 U.S.C. §1961; 18 U.S.C. §1962; U.S.C. § 1964[1] et,seq of the civil RACKETEER INFLUENCED AND

CORRUPT ORGANIZATIONS ACT (RICO); and Article III, Section 2, to the Constitution of the United States codified under 28 U.S.C. § 1331. Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is invoked in that, the majority of defendants are residents from different states of the Union. For the purpose of Antitrust jurisdiction, provisions are invoked pursuant to TEXAS BUSINESS AND COMMERCE CODE, Title 2, Chapter 15.05 et, seq., and applicable provisions of the CLAYTON ACT pursuant to 15 U.S.C. § 15(a).

## **VENUE**

Venue is invoked pursuant to 18 U.S.C. § 1965(a)[2] and § 1965(b)[3].Venue is also proper within this Court pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(c)1, in that,  plaintiffs

_____

[1] 18 U.S.C. § 1964(c)

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

[2] 18 U.S.C. 1965(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

[3] (b) In any action **under section 1964 of this chapter** in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court

ALKIVIADESDAVID; FILMON TV LTD.; FILMON TV INC., ALKI DAVID PRODUCTION INC., HOLOGRAM USA, SWISSX, are business entities which conducts commercial business activities thru DISH NETWORK and across the United States to include the state of Texas, and the Northern District of Texas. SWISSX conducts franchise commercial business activities across the United States to include the state of Texas, and the Northern District of Texas. Moreover, a substantial part of the events giving rise to the claim occurred in the Northern District of Texas and more specifically events surrounding the activities of Defendants CHASITY JONES and COMCAST, INC., as further set out below.

## EXCEPTIONAL CIRCUMSTANCES REGARDING VENUE AND THE ENDS OF JUSTICE

18 U.S.C. § 1965(a) provides that "any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person *resides, is found, has an agent, or transacts his affairs*."(Emp added) The RICO Enterprise as further described below, and more specifically CHASITY CHARNISE JONES and COMCAST INC., can be found, or has an agent, or transact their affairs in and through the state of Texas, to include the federal Northern District of Texas. Moreover, CHASITY CHARNISE

---

may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

JONES maintains a luxury residence within the state of TEXAS at 6633 John Hickman Pkwy, #1702, Frisco, Texas 75246.



CHASITY CHARNISE JONES further conducts business affairs in the Northern District of Texas at Dallas at the Dallas Love Field Airport. In that, on or about November 16, 2019, CHASITY CHARNISE JONES made purchase and or investment in a luxury sports car, and more specifically a 2015 BMW i8 from a California auto dealership. The BMW was purchased with proceeds from criminal activities of GRIRADI-KEESE Enterprise as further described below and within this civil RICO Complaint.



LAW OFFICE OF MARK LIEBERMAN
1704 Pine Hills Lane
Corinth, Texas 76210

4

On or about September 4, 2021, CHASITY CHARNISE JONES transported the above-described 2015 BMW i8 motor vehicle in interstate commerce to Dallas, Texas, in furtherance of money laundering from proceeds derived from the plan, and scheme of the GIRARDI-KEESE RICO activities to defraud. The below evidentiary photo contains an audio link is where CHASITY CHARNISE JONES states, "To Dallas she goes."



Following interstate transportation of the 2015 BMW i8 to Dallas, Texas, CHASITY CHARNISE JONES used the motor vehicle to invest in a TURO Rental Car business venture located in Dallas, Texas, at the Dallas Love Field Airport in the Northern District of Texas.





Federal money laundering laws pursuant to 18 U.S.C. § 1956(a)(1) prohibits property involved in a financial transaction representing the proceeds of some form of unlawful activity or conducts,  to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

Under a related case which was presided over by United States District Judge Thomas Durkin, Northern District of Illinois, it was discovered the existence of *"a decades-long RICO enterprise involving Defendants, as well as a number of other individuals and entities. Lira, No. 2022-cv-03977, dkt. 1 (N.D. Cal. July 6, 2022)."* [4]  Judge Durkin identified other pending proceedings—criminal and civil—as one of the ways that justice might ultimately be done. Accordingly, the ends of justice should mandate that this lawsuit proceed to resolution in the Northern District of Texas, and beyond reach of corruption which is continuously unfolding within the California state judiciary and political arenas.

---

[4] Case: 1:20-cv-07115 Document #: 197 Filed: 11/16/22

## ABOUT THE PLAINTIFFS

Plaintiff ALKIVIADES DAVID, known from hereinafter as DAVID, is a natural person, domiciled in the state of Texas during all times relevant, and a citizen of the United Kingdom.

Plaintiff FILMON TV LTD., known from hereinafter as, FILMON LTD, is a United Kingdom company doing business in the United States to include the state of Texas and internationally.

Plaintiff HOLOGRAM USA., known from hereinafter as, HOLOGRAM, is a United Kingdom company doing business in the United States to include the state of Texas and internationally.

Plaintiff FILMON TV INC., known from hereinafter as FILMON INC is a Delaware corporation, doing business internationally.

Plaintiff ALKI DAVID PRODUCTIONS INC., known from hereinafter as ALKI DAVID PRODICTIONS INC., is a Delaware corporation doing business internationally.

Plaintiff SWISSX, known from hereinafter as SWISSX, is a franchised company, and based in the state of Texas during all times relevant. SWISSX is a subsidiary company of FILMON TV INC.

## ABOUT THE DEFENDANTS

18 U.S.C. § 1965(b) provides that "in any action *under section 1964 of this chapter* in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties

to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." (Emp added)

Defendant THOMAS GIRARDI, known from hereinafter as GIRARDI, is a natural person and a resident of the State of California. Girardi is the sole equity partner of the GIRARDI -KEESE Law Firm.

Defendant GLORIA ALLRED, known from hereinafter as ALLRED, is a natural person and a resident of the State of California. Allred is a partner in Allred, Maroko & Goldberg.

Defendant LISA BLOOM, known from hereinafter as BLOOM, is a natural person and a resident of the State of California. Bloom is a partner in Allred, Maroko & Goldberg. BLOOM is the daughter of ALLRED.

Defendant NATHAN GOLDBERG, known from hereinafter as GOLDBERG, is a natural person and a resident of the State of California. Goldberg is a partner in Allred, Maroko & Goldberg.

Defendant DOLORES Y. LEAL, known from hereinafter as LEAL, is a natural person and a resident of the State of California. Leal is a partner in Allred, Maroko & Goldberg.

Defendant RENEE MOCHKATEL, known from hereinafter as MOCHKATEL, is a natural person and a resident of the State of California. MOCHKATEL, is a partner in Allred, Maroko & Goldberg.

Defendant JOSEPH CHORA is a natural person and a resident of the State of California. CHORA is a partner in CHORA YOUNG & MANASSERIAN LLP.

Defendant ALLRED, MAROKO & GOLDBERG, known from hereinafter as AMG, is a California Law Firm by Partnership.

Defendant ELIZABETH TAYLOR, known from hereinafter as TAYLOR, is a natural person and a resident of the State of California.

Defendant MAHIM KHAN, known from hereinafter as KHAN, is a natural person and a resident of the State of California.

Defendant CHASITY CHARNISE JONES, known from hereinafter as JONES, is a natural person and a resident of the State of California and of the state of Texas.

Defendant LAUREN REEVES, known from hereinafter as REEVES, is a natural person and a resident of the State of California.

Defendant LEAH WILSON known from hereinafter as WILSON is a natural person and a resident and a citizen of California. WILSON is the Executive Director of the California State Bar. WILSON is responsible for properly and efficiently investigating all complaints made against attorneys. The executive director

Defendant GAVIN NEWSOM known from hereinafter as NEWSOM is a natural person, a resident of the State of California. NEWSOM is the Governor of the State of California who appointed four of the six members of the Board of Directors of the State Bar of California under direction or influence of GIRARDI.

Defendant COMCAST INC. (formerly known as American Cable Systems and Comcast Holdings) and known from hereinafter as COMCAST INC is headquartered in Philadelphia, PA. COMCAST INC., is the largest of America's multinational telecommunications platforms for

broadcasting and cable television.   COMCAST has a registered agent for its Dallas, Texas, business market at CT CORPORATION SYSTEM, 1999 Bryan St., Ste. 900, Dallas, Texas, 75201-3136, USA.

Defendant COMCAST VENTURES, LLC., known from hereinafter as COMCAST VENTURES is a venture capital firm headquartered in San Francisco, California and a subsidiary of COMCAST INC.

## **THE RICO ENTERPRISE**

The racketeering enterprise of GIRARDI-KEESE, are "*associates in fact*", and formed as a group of persons informally associated together for a common purpose of engaging in a course of conduct as a continuing unit to defraud.

The unit known from hereinafter as the GIRARDI-KEESE Enterprise, acted in concert with the above named defendants and others in furtherance of a scheme to victimize by defrauding wealthy persons, corporations (both domestic and international) [5], celebrities, and business executives, to include Plaintiffs to the instant case.

Defendant TAYLOR acted as one of several unknown recruiters as well as a non-attorney co-participant client in one or more civil litigation schemes involving the GIRARDI-KEESE Enterprise.

---

[5] See – (Exhibit 7) attached hereto and by this reference made a part hereof.

Other persons engaged in the GIRARDI-KEESE Enterprise, and acted in concert with TAYLOR, KHAN, REEVES, and JONES, were ALLRED, GOLDBERG, MOCHKATEL, ALLRED, MAROKO & GOLDBERG (AMG), CHORA, BLOOM, WILSON served at all times relevant as the Executive Director of THE STATE BAR OF CALIFORNIA. GAVIN NEWSOM is the Governor of the State of California who appointed four of the six members of the Board of Directors to THE STATE BAR OF CALIFORNIA, and politically benefited from schemes to defraud by the GIRARDI-KEESE Enterprise;



**Gavin Newsom has longstanding ties to Dem power player facing lawsuits, investigations**

"In effect, they deferred to Girardi, who had a reputation as a titan of the plaintiffs' bar in California and throughout the country." --- "Indeed, Girardi's gaudy displays of wealth and extravagant lifestyle furthered the fiction that he and his firm were successful and solvent."

*United States District Judge Tom Durkin*
*Nov 2, 2022 / The Recorder*

COMCAST INC. (formerly known as American Cable Systems and Comcast Holdings) is headquartered in Philadelphia, PA. COMCAST INC., is the largest of America's multinational telecommunications platforms for broadcasting and cable television.,

COMCAST VENTURES, LLC., is a venture capital firm headquartered in San Francisco, California and a subsidiary of COMCAST INC. Both CONCAST INC., and COMCAST VENTURES, are associated together with the GIRARDI-KEESE Enterprise for a common purpose of engaging in a course of racketeering conduct. NBC News, CNBC, and MSNBC are

owned by COMCAST INC., which also owns UNIVERSAL PICTURES and is a minority partner

to five Chinese state-owned companies.

COMCAST INC., and COMCAST VENTURES, through their control of major media

networks and outlets, engaged in a course of conduct to further conceal the fraudulent activities

of the GIRARDI-KEESE Enterprise. In that, COMCAST INC., and COMCAST VENTURES

censored DAVID or caused DAVID to be censored for the common purpose of continuing the

long-term operation of the GIRARDI-KEESE Enterprise.


### THE GIRARDI-KEESE ENTERPRISE COMMON PURPOSE

For decades corrupt California based attorneys to include but not limited to: THOMAS

GARARDI; GLORIA ALLRED; LISA BLOOM; NATHAN GOLDBERG; RENEE

MOCHKATEL; DOLORES Y. LEAL, and CHORA have developed and operated a racketeering

Enterprise in what is estimated by federal prosecutors to exceed $100 million USD, by

sophisticated schemes.

The common purpose of the GIRARDI-KEESE Enterprise in the instant scheme, was to

embezzle and or defraud for the purpose of acquiring illicit money from represented clients,

wealthy persons, corporations (both domestic and international), celebrities, and business

executives through a pattern of civil litigations facilitated by knowingly false (sexually related)

allegations.

In furtherance of the scheme to defraud, the GIRARDI-KEESE Enterprise, through bribes

and or industry favors (to include judicial and political favors or support), acquired lucrative court

induced monetary judgments, awards and or concealment favors, whereas the Enterprise's course of conduct functioned as a continuing unit.

The Enterprise's course of conduct further elicited the aid and assistance of non-attorney co-participants for the common purpose of the scheme to defraud, to include but not limited to: ELIZABETH TAYLOR; MAHIM KHAN; LAUREN REEVES; CHASITY JONES; LISA BLOOM; GAVIN NEWSOM; LEAH WILSON; and the STATE BAR OF CALIFORNIA; COMCAST INC.; and COMCAST VENTURES.

## RICO PREDICATES UNDER 18 U.S.C. § 1961

The first predicated acts of racketeering for purposes of this lawsuit is established under the provisions of the federal BRIBERY statute as set out in 18 U.S.C. § 201(c)(2)(3).[6] In that, on or about February 21, 2021, GARARDI, while acting together with others for a common purpose of engaging in a course of racketeering activities and in furtherance of a scheme to defraud.

_____

[6] 18 U.S.C. 21(c)(2)(3) – Who ever
(2)
directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, **or other proceeding,** before any court, any committee of either House or both Houses of Congress, or any agency, commission, or officer authorized by the laws of the United States to hear evidence or take testimony, or for or because of such person's absence therefrom;
(3)
directly or indirectly, demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon any such trial, hearing, **or other proceeding,** or for or because of such person's absence therefrom.
shall be fined under this title or imprisoned for not more than two years, or both. (Emp added)

attempted to bribe attorney JAY EDELSON, so as to conceal one of the Enterprise's many schemes and obstruct the course of justice in a federal civil proceeding, and more specifically the proceeding as reported by public records in the related federal civil case *Edelson v. Girardi,* 1:20-cv-07115, United States District Court for the Northern District of Illinois.. *See –* (Exhibit 1) Pg 9 ¶ 2, attached hereto and by this reference made a part hereof.

> "Thomas Girardi openly boasted of his expansive web of control in Los Angeles
> and tried to bribe the Edelson firm into making this case go away…"

The second predicated act of racketeering for purpose of this lawsuit is established under the provisions of the federal WIRE FRAUD statute as set out in 18 U.S.C. 1343[7]. In that, on or about February 16, 2021, GIRARDI used one or more interstate telephone communications in furtherance of the Enterprise's scheme to defraud clients, wealthy persons, corporations (both domestic and international), celebrities, and business executives to include Plaintiffs to the instant case.

> "I want to be in charge of all of your shit…but at the end of about nine months
> I want you to say, god darn you made me another million"

-------------------

[7] 18 U.S.C. § 1343

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

## THE RICO COURSE OF CONDUCT TO DEFRAUD

The racketeering scheme or otherwise course of conduct as prosecuted in this lawsuit comprises of both known and unknown participants but was formulated and orchestrated by the parties named above as RICO defendants.

One of the many schemes[8] but in particular, the instant scheme to defraud involves the GIRARDI–KEESE Law Firm, and its conspiring and colluding with other California based attorneys, private judges, and a select group of non-attorney co-participants clients.

The non-attorney co-participants while acting as clients of GIRARDI-KEESE or attorneys engaged in the course of racketeering conduct in furtherance of the scheme to defraud, made false allegations in state civil court proceedings (and usually of a sexual nature) against wealthy persons, corporations (both domestic and international), celebrities and business executives, to include but not limited to Plaintiffs to the instant case.

The uses of emails, telephone communications and electronic court filings to include but not limited to, the Superior Court of Los Angeles County, Cases BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 *Jones v. David*, BC649025 *Taylor v. David*, were an essential part of the continuing course of conduct to defraud, for the purpose of predicated acts of racketeering.

The GIRARDI-KEESE Law Firm or attorneys engaged in a course of racketeering conduct in furtherance of the scheme to defraud, represented the non-attorney co-participants clients as civil lawsuit litigants in state court proceedings, where quid pro quo agreements were made between the GIRARDI-KEESE Law Firm, and participating retired and or GIRARDI influenced "private judges" to secure the return of lucrative civil rulings, awards and judgments against the fraudulently victimized defending party or otherwise wealthy persons, corporations (both domestic and international), celebrities, and business executives to include Plaintiffs to the instant case. In other words, the civil cases were "fixed" by GIRARDI in favor of the non-attorney co-participant clients. *See* – (Exhibit 2) pg. 9 ¶ 2, attached hereto and by this reference made a part hereof.

> "I get along great with all the judges, I can do some real good sh*t. But I want to make sure you know we'd be joined at the hip."
>
> *Thomas Girardi*

The GIRARDI-KEESE Law Firm, subsequently collected enrichments from the fraudulent litigations for the GIRARDI-KEESE Enterprise to payout professional debts, and or payments to non-attorney co-participants clients to include but not limited to TAYLOR, KHAN, JONES, and REEVES.

The GIRARDI-KEESE Law Firm further diverted the ill-gotten proceeds from the scheme to personal accounts belonging to GIRARDI himself and other conspiring and or colluding lawyers and or parties acting in furtherance, and in support of the general scheme to defraud.

"First, he unambiguously finds that Girardi was running a Ponzi scheme," Edelson wrote. "Given that Girardi and his firm got away with this **for decades**, it is remarkable that this is the first time we have seen this finding in such a clear and unambiguous way. Second, he leaves little doubt about his views about what others at the firm knew about the illegal scheme." (Emp added)

*Jay Edelson*

Defendant REEVES is a non-attorney co-participant client to the GIRARDI-KEESE Law Firm, and acted together, with the GIRARDI-KEESE Enterprise for a common purpose to defraud and to benefit from proceeds derived from racketeering activities to include federal wire fraud. Under Texas law participants in a RICO enterprise *are jointly and severally liable for the acts of any member of the enterprise. See, e.g.*, *United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002) (Emp added)

Defendant TAYLOR acted in a course of conduct with the GIRARDI-KEESE Enterprise to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of $11,000,000.00 against the plaintiffs.

Defendant KHAN acted in a course of conduct with the GIRARDI-KEESE Enterprise to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of $58,250,000.00 against the plaintiffs.

Defendant JONES acted in a course of conduct with the GIRARDI-KEESE Enterprise to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of $11,000,000.00 against the plaintiffs.

Defendant REEVES acted in a course of conduct with the GIRARDI-KEESE Enterprise to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of $4,795,000.00 against the plaintiffs.

Defendant WILSON acted in a course of conduct with the GIRARDI-KEESE Law Firm to conceal, and or coverup complaints of corruption involving GIRARDI and or the attorneys associated with the GIRARDI-KEESE Enterprise for the common purpose of continuing the conduct of the Enterprise. *See* - (Exhibits 3 and 4) attached hereto and by this reference made a part hereof.

Defendant KHAN and REEVES acting under the direction and or influenced of ALLRED, GOLDBERG, LEAL, MOCHKATEL, AMG, and other parties within the GIRARDI KEESE Enterprise and under a course of conduct for the common purpose to defraud, performed as non-attorney co-participant clients against DAVID; FILMON LTD.; FILMON INC., and ALKI DAVID PRODUCTION INC.

KHAN and REEVES, at all times relevant was aware that their civil court claims against DAVID; FILMON LTD.; FILMON INC., were false and predicated upon a fraudulent scheme advanced by ALLRED, GOLDBERG, LEAL, MOCHKATEL, and AMG.

Defendant JONES was recruited by TAYLOR under the direction and influenced of ALLRED and BLOOM, and other parties within the GIRARDI-KEESE Enterprise to act under a

course of conduct for the common purpose to defraud. That is, both TAYLOR and JONES performed as non-attorney co-participant clients against DAVID; FILMON LTD.; FILMON INC.; and ALKI DAVID PRODUCTION INC.

TAYLOR and JONES, at all times relevant was aware that their civil court claims against DAVID; FILMON LTD.; FILMON INC., were false and predicated upon a fraudulent scheme advanced by BLOOM and ALLRED.

CHORA acted as collection agent for the GIRADI-KEESE Enterprise. In that, on or about January 7, 2023, CHORA engaged in conduct to collect an unlawful debt against DAVID, and that such debt was generated by a pattern of racketeering activity. Federal law under 18 U.S.C. § 1962(a) prohibits the collection of debt predicated upon unlawful activities. CHORA acts as the "Enforcer" for the GIRARDI-KEESE Enterprise.

## MONEY LAUNDERING BY JONES IN THE STATE OF TEXAS

On October 24, 2021, JONES transacted a financial affair, in that, JONES traveled from the state of California to Texas and affecting interstate commerce, where JONES used income derived either directly or indirectly at the Dallas Arboretum, and that such used income was derived from a pattern of racketeering activity from the GIRARDI-KEESE Enterprise. 18 U.S.C. § 1965(a) provides that any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, *or transacts his affairs*.



On September 12, 2020, JONES traveled from California to Texas affecting interstate commerce, where JONES transacted her affairs using income derived either directly or indirectly at the Marc Samuels Jewelry in Grapevine, Northern District of Texas, and that such income used at Marc Samuels Jewelry was derived from a pattern of racketeering activity from the GIRARDI-KEESE Enterprise. *See* – the below image.



Upon knowledge and belief JONES has further used proceeds derived directly or indirectly, from a pattern of racketeering activity where JONES has participated as a principal to the GIRARDI-KEESE Enterprise, and has invested in the college education of her daughter who

attends a Texas University, and more specifically Texas Southern University at Houston. Texas money laundering statutes provide that:

> Sec. 34.02.  TEXAS PENAL CODE -
> MONEY LAUNDERING.  (a)  A person commits an offense if the person knowingly:
> (1)  acquires or maintains an interest in, conceals, possesses, transfers, or transports the proceeds of criminal activity.
> (3)  invests, expends, or receives, or offers to invest, expend, or receive, the proceeds of criminal activity or funds that the person believes are the proceeds of criminal activity; or
> (4)  finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity.

Federal money laundering law further prohibits the use of illicit funds derived from a pattern of unlawful activities as achieved by the GIRARDI-KEESE Enterprise which JONES engaged in. More specifically 18 U.S.C. § 1956(a) provides sanctions for:

> (1)Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
>
> (2)Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

In order to prevail in a civil action under RICO, plaintiff must establish the following elements by a preponderance of the evidence: 1) a violation of the substantive RICO statute, 18 U.S.C. § 1962; and 2) an injury to his business or property by reason of such violation. 18 U.S.C.

§ 1964(c); *Sedima   S.P.R.L.   v.   Imrex   Co.,* ___   U.S.   ___, 105   S.Ct.   3275, 87   L.Ed.2d 346 (1985); *Alcorn County, Miss. v. U.S. Interstate Supplies,* 731 F.2d 1160 (5th Cir. 1984).

### ANTITRUST VIOLATION AND TORTUROUS INTERFERENCE
### AGAINST COMCAST INC., AND COMCAST VENTURES LLC

FILMON LTD., is a United Kingdom based company that delivers conservative streaming media broadcast by way of the internet. FILMON LTD., often covers conservative political viewpoints and news matters that involves corruption in government.

COMCAST INC., and COMCAST LLC., censored FILMON LTD., or caused its censoring to conceal and or prevent FILMON LTD., from exposing early on the corrupt and racketeering conduct of the GIRARDI-KEESE Enterprise.

The censoring of FILMON LTD., by COMCAST INC., and COMCAST LLC., lessened competition with their telecommunications brands by injury, destruction, and or preventative competition to FILMON LTD., and its customer base market in the state of Texas.[9]

### FACTUAL ALLEGATIONS

Girardi was once a top plaintiffs' attorney and Democratic powerbroker who gained reality TV fame on "Real Housewives of Beverly Hills" alongside his third wife, Erika. His downfall in December 2020 was in part triggered by a federal judge finding that he had misappropriated

---

[9] Sec. 15.05. UNLAWFUL PRACTICES. (a) Every contract, combination, or conspiracy in restraint of trade or commerce is unlawful.

millions from families of those killed in an Indonesian plane crash. But after the collapse of his Wilshire Boulevard law firm, scores of clients came forward saying they were swindled by Girardi and The Los Angeles Times documented a trail of misconduct and allegations going back decades. *See* – (Exhibit 1) attached hereto and by this reference made a part hereof.

The Chicago based Edelson law firm accused Girardi and other lawyers at his defunct firm of running ***"the largest criminal racketeering enterprise in the history of plaintiffs' law,"*** pocketing millions from clients, vendors and fellow attorneys.

On December 07, 2016, REEVES, represented by ALLRED, sued DAVID (who domiciles in the state of Texas), Hologram USA, FILMON LTD (which conducts business in and through the state of Texas), and ALKI DAVID PRODUCTIONS, in state court and more specifically Los Angeles Superior Court, Case No. BC643099.   The case involved fraudulent civil litigation premised on allegations of sexual battery and or sexual harassment which was engaged in by the GIRARDI-KEESE Enterprise and REEVES.

Defendant ALLRED's partners, GOLDBERG, LEAL, MOCHKATEL and AMG represented REEVES, who worked as a comedy writer for FILMON LTD.

On April 15, 2020, a civil judgment for REEVES was entered against the corporate defendants' Hologram USA, Inc., ALKI DAVID PRODUCTIONS, INC., and FILMON LTD in the amount of $650,000 for compensatory damages. REEVES later agreed to a reduction in her compensatory award in the amount of $445,000. REEVES, at all times relevant was aware that her civil lawsuit and the claims made against the Plaintiffs were predicated upon knowingly false

allegations and fraud. A punitive damages award in the amount of $4.35 million was entered against DAVID for the aggregate sum of $4,795,000.00.

. The fraud induced award and judgment against Hologram USA, Inc., ALKI DAVID PRODUCTIONS, INC., and FILMON LTD restrained commerce and the plaintiff's ability to conduct trade and or business in the state of Texas.

Defendant DAVID had four times sought to have THE BAR address his legitimate claims concerning the egregious and unethical conduct of ALLRED and her partners. DAVID's correspondence with WILSON, who served during all times relevant as the Executive Director of THE BAR. THE BAR ignored three prior complaints that DAVID had sent to THE BAR where the Complaints never lead to an investigation into the unethical conduct of ALLRED or GIRARDI, and the unlawful conduct was able to continue. *See* – (Exhibit 3) attached hereto and by this reference made a part hereof.

On April 29, 2020, Attorney Murray B. Greenberg, Esq. wrote THE BAR regarding DAVIDs' submitted complaints. Attorney Greenberg wrote on behalf of DAVID against attorneys ALLRED, GOLDBERG, LEAL and MOCHKATEL based on their professional misconduct in the case held before Judge Michelle Williams Court in Los Angeles Superior Court, Central District Case No. BC654017 entitled MAHIM KHAN, Plaintiff v. HOLOGRAM USA, Inc; ALKI DAVID PRODUCTIONS, INC.; FILMON TV, INC. *See*- (Exhibit 4) attached hereto and by this reference made a part hereof.

DAVID sent WILSON, an email concerning THE BAR's entire failure to address the merits of any of his three prior complaints. DAVID did so after it was revealed that THE BAR had

failed to investigate attorney misconduct. WILSON, who apparently had not even read the attachments sent to her by DAVID responded on June 25, 2022, asking *"have you considered filing a complaint against Ms. Allred or Ms. Bloom?" See* – (Exhibit 4) attached hereto and by this reference made a part hereof.

 THE BAR while engaging in a course of conduct as a continuing enterprise unit, from at least the year 2015 until present failed to investigate many complaints. The Press has widely reported that THE BAR has failed to effectively discipline corrupt attorneys, allowing lawyers to repeatedly violate professional standards, and harm members of the public, however COMCAST INC., and COMCAST VENTURES, LLC, acted to censor or caused to be censored the matter involving DAVID as a victim to the identical subject matter. Upon knowledge and belief COMCAST retaliated against the Plaintiffs in part for unfavorable litigation in *Filmon Inc v. Doubleverify Inc*, Supreme Court State of California, No. 244156 (May 6, 2019).

 Recently, it has been revealed by the Press that GIRARDI was involved with securing Judges to rule for a particular party in many cases. GIRARDI was the "Fixer" of cases for a certain network of attorneys as reported by another attorney.

 On information and belief ALLRED is one of these attorneys for whom GIRARDI fixed several cases including Los Angeles Superior Court cases No.  BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 *Jones v. David*, BC649025 *Taylor v. David*, involving the parties of DAVID, Hologram USA, FILMON LTD, and ALKI DAVID PRODUCTIONS.

The corruption recently discovered as portrayed in numerous domestic and international news platforms, layout in detail the vast schemes in which the GIRARDI-KEESE Enterprise is involved with on a global level. The matter is still being investigated on a regular basis. The amount of corruption and scheme types are exposed on a regular basis as they continue to investigate substantial evidence in support of this matter is ever growing.

Defendant DAVID and his attorney at the time of being sued by REEVES complained to the court, and to THE BAR about the unethical and criminal behavior of ALLRED and her partners. More specifically, as set forth in the State Bar Complaint. *See* – (Exhibit 5) attached hereto and by this reference made a part hereof.

Defendants ALLRED, GOLDBERG and their law firm partners in the REEVES litigation and in inter-related cases, including *Mahim Khan v. Hologram USA, Inc., Alki David Productions, Inc., FilmOn TV, Inc., Alkiviades David*, Case No. BC 654017, (KHAN) switched exhibit and witness lists in those trials, and forged the signature of Ellyn Garofolo, who at that time was counsel for DAVID, ALKI DAVID PRODUCTIONS, INC, and FILMON INC.

*Kahn* was a highly contentious lawsuit which involved the Enterprises' status quo allegations of battery and sexual harassment against wealthy persons, corporations (both domestic and international), celebrities, and business executives to include DAVID, ALKI DAVID PRODUCTIONS, INC, and FILMON INC.

The most egregious ethical breach involved the manipulation of a joint exhibit list by KAHN's attorneys which caused a materially altered list to be filed with the court. As if this action was not serious enough, KAHN's attorneys also removed the signature page of the DAVID's

attorney's (Ellyn S. Garofalo) and subsequently affixed it to a previously agreed upon version. KAHN's attorneys then attached the forged signature to the fraudulent version after discovery that attorney Garofalo was unavailable. GOLDBERG then signed the exhibit list and filed it with the court.

The act was done without the knowledge, permission or authorization of Ms. Garofalo or anyone else in her office. GOLDBERG performed this particular act in the course of conduct for a common purpose of the Enterprise to acquire money through racketeering activities.

Defendants LEAL and MOCHKATEL were two other attorneys listed on the pleading as well as ALLRED who is a partner of the law firm.

In addition to the above-referenced misconduct, the attorneys for KHAN sought to exclude documents that were previously produced to her attorneys by indicating falsely to the court that they were not disclosed or produced in discovery.


## THE TAYLOR, KHAN, JONES AND TAYLOR RICO CONSPIRACY THAT PREDICATED FRAUDULENT STATE COURT LAWSUITS

In 2015 DAVID engage in a consensual relationship with MARY RIZZO known from hereinafter as RIZZO. RIZZO who worked as an employee at DAVID's Hologram USA company. At a later time during the acquaintance RIZZO employed the legal counsel of ALLRED to bring forth a workplace related lawsuit against DAVID. The lawsuit was settled under a strict Confidentiality Agreement for an undisclosed amount.

During this period TAYLOR and KHAN discovered the lawsuit involving RIZZO and decided to engage in copycat conduct for the purpose of acquiring money from DAVID for

themselves. TAYLOR and KHAN's actions caused DAVID to threaten criminal charges as reported by the May 7, 2016 telephone text communication between RIZZO and JONES. Text messages that were associated with the lawsuits but denied relevance during all litigations.

JONES: *"He told me he was filing criminal charges against her."*

RIZZO: *"Damn. Poor Elizabeth. MK too?"*

JONES: *"No."*

RIZZO: *"You know what's crazy…I still have text from Elizabeth saying all she needs is MK and you to talk."*

JONE: *"She asked me to help her case and kept calling me over and over via text but I'm not sure if she told me to file against him or not bc I wasn't paying attention to her."*
**************
   *"Yes I'm sure. Elizabeth prob said we all seen it or something. Who know*

RIZZO: *"Yea she probably did. I never did tho."*

**************

JONES: *"I never seen him touch her but she always had something to say about everyone  lol*

RIZZO: *"OMG she did! Lol"* – *"She liked to gossip"*

JONES: *"Yep"*

RIZZO: *"Even about fake stuff"*

JONES: *"Lol yes"*

At a date uncertain but following the date of the Confidential Settlement Agreement, ALLRED confided in TAYLOR the settlement amount that DAVID had made RIZZO.

TAYLOR subsequently announced the confidential settlement amount during an employee related dinner at Cafe Roma in Beverly Hills, California where JONES, KHAN and others were present. According to RIZZO news of the settlement amount inspired a plot by TAYLOR, KHAN and JONES to extort DAVID, and that each would testify for each the other as needed. The conspiracy between TAYLOR, KHAN, and JONES was not engaged in because of any sexual related activities involving DAVID, but for reasons that each defendant was disgruntled because of the dollar amount of salaries and or commissions that each defendant was being paid under DAVID's employ. In the text conversation between RIZZO and JONES, JONES on May 26, 2015 reveals as much:

JONES: *"I hate Filmon!!"* – *"I'm quitting for sure! They only paid me part of my commission and Alki agreed to pay me and Peter don't want to pay. Alki said he was going to make sure I get paid but this is not right I have to fight for my money."*

RIZZO: *"I can't believe that. That company is ridiculous. It's funny how everyone has trouble getting paid there commissions but that never was a problem for Jill in the UK. Makes you wonder."*

JONES: *"*

*************** NOVEMBER 16, 2015

JONES: *"I'm going to call the lawyer back. That what Alki get!!!!"*

RIZZO: *"Lol"* --- *"Yea I knew something was up when MK stopped showing up."*

JONES: *"I think I'm going to sue him too bc he deserves it by the way he treat people and the things he do to people"* --- *"I'm going to call Elizabeth today this afternoon"*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RIZZO: *"It's not just Elizabeth but MK and now you"*

JONES: *"Yes"* --- *"He's a looser!!!!"*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* NOVEMBER 17, 2015

JONES: *"I'm going to sue Alki for hassassment. I'm going to go home and find another attorney today and go over all my notes I kept"*--- *"That whok company is dirty"*--- *"They are trying to go public and that not fair how he does me and people"* --- *"I'm going to call and retract my statement from Barry Rotyman too"*

ALLRED and BLOOM encouraged TAYLOR, KHAN, and JONES to engage others into joining the Enterprise with a common purpose .

ALLRED wouldn't take TAYLORS' case unless TAYLOR recruited two more clients. The two clients were KHAN and JONES.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* JUNE 2, 2015

TAYLOR: *"No one is willing to be a witness now and Gloria Allred won't take my case if not. If the tables were turned I would have you girls back in a heartbeat. No questions asked. This entire thing just sucks & all leads back to being scared of Alki. Like we make 2,000 a month, it's a joke. I already had a final interview today. Lol"* --- *"All I need is Chasity and MK"* --- *"MK to say he touched her boobs (which she told me she would say)"* --- *"Chasity to say she was a witness to the headstand thing)"*

## THE RICO NEXUS TO TEXAS AND JONES' CRIMINALITY

JONES has a federal criminal conviction relating to a 2002 scheme to defraud Wells Fargo

Bank utilizing like conduct as described within the engaged racketeering activities to the instant

lawsuit. See – (Exhibit 6) attached hereto and by this reference made a part hereof.

> Beginning in or about August 2002, and continuing to in or about November 2002,
> in Los Angeles County, within the Central District of California and elsewhere,
> defendants CHASITY JONES, *** and others known and unknown to the Grand
> Jury, knowingly executed and attempted to execute a scheme to defraud Wells
> Fargo Bank, and to obtain monies and funds owned by and in the custody and
> control of said financial institution by means of material false and fraudulent
> pretenses, representations and promises. The fraudulent scheme operated in the
> following manner. Defendant CHASITY JONES would improperly access and
> retrieve Wells Fargo Bank customer account information using her position as an
> employee at Wells Fargo Bank, 9354 Wilshire Boulevard, Beverly Hills, California.
> (Omissions added)

JONES' conduct within the GIRARGI-KEESE Enterprise is a continuation of JONES'

criminality. JONES was hired by DAVID as an employee of Hologram USA, until the date of her

2015 termination by the company for "faking a $40K sales contracts" in pursuit of greater

commissions. Following the employment discharge of JONES, BLOOM was retained under

persuasion of TAYLOR to pursue fraudulent civil damages against DAVID and Hologram USA

for battery. JONES later recruited NICHOLS who is also a former employee of DAVID to make

similar civil allegations against DAVID. Both JONES and NICHOLS were represented by

BLOOM. Both JONES and NICHOLS at all times relevant were aware that their civil lawsuits

and the claims made against the relevant Plaintiffs were predicated upon knowingly false

allegations and fraud. NICHOLS has since recanted all allegations of misconduct against DAVID.

Title 18 U.S.C. 1962(a) provides that "It shall be unlawful for any person who has received any

income derived, directly or indirectly, from a pattern of racketeering activity or through collection

of an unlawful debt in which such person has participated as a principal within the meaning of

section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such

income, or the proceeds of such income, in acquisition of any interest in, or the establishment or

operation of, any enterprise which is engaged in, or the activities of which affect, interstate or

foreign commerce.

Defendant JONES has affairs and a residential nexus to California and the state of Texas

and more specifically to the north Texas Collin and Dallas counties area at 6633 John Hickman

Pkwy, #1702, Frisco, Texas 75246 for the purpose of interstate commerce activities under 18

U.S.C. § 1962(a).

By knowledge and belief COMCAST INC. employed GIRARDI as an attorney, who over

time developed a business and or social relationship with JENNIFER SIEBEL NEWSOM who is

the wife of NEWSOM.

Through the GIRARDI-NEWSOM relationship COMCAST was induced to engage in

conduct of the GIRARDI-KEESE Enterprise. COMCAST INC., engaged in quid pro quo activities

of the GIRARDI-KEESE Enterprise at the behest of GIRARDI, NEWSOME and JENNIFER

SIEBEL NEWSOME.



COMCAST further donated to NEWSOM's political campaign in furtherance of the course of conduct with the GIRARDI-KEESE Enterprise.

"But the donations raise questions of conflicts of interest, and highlight a political system that gives wealthy contributors extra opportunities to hobnob with the politicians they hope to influence."*** "What we're worried about," said Loyola Law School Professor Jessica Levinson, an expert in political ethics, "is either actual corruption or the appearance of corruption."

Beginning in or about the year 2020, COMCAST INC., and COMCAST VENTURES LLC., censored FILMON LTD., or caused its censoring to prevent FILMON LTD., from exposing early on the corrupt and racketeering conduct of the GIRARDI-KEESE Enterprise. The censoring of FILMON LTD., by COMCAST INC., and COMCAST LLC., further lessened streaming media competition with the telecommunications COMCAST OnDEMAND brand(s) to include but not limited to NBC News, CNBC, and MSNBC and Xfinity by injury, destruction, and or preventative competition to FILMON LTD., and its customer base in the state of Texas.

## INJURY TO PLAINTIFFS IN THE STATE OF TEXAS
### ALKIVIADES DAVID; FILMON TV LTD.;
### FILMON TV INC.; ALKI DAVID PRODUCTION INC.

Plaintiffs are engaged in business contracts with Dallas, Texas, based company "SWISSX" inasmuch, that Plaintiff's ability to conduct trade or business in, through and from the state of Texas to include advertising have been highly affected by the course of conduct engaged in by the GIRARDI-KEESE Enterprise to include injury to Plaintiffs' financial property and reputation as set out in the above sections. The Texas Constitution provides: *"All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."* TEX. CONST. art. I, § 13.

Texas courts have personal jurisdiction over the California based nonresident GIRARDI-KEESE Enterprise under 18 U.S.C. § 1965(b) and the Texas Longarm Statute. In that, the state's long-arm statute permits such jurisdiction, and the exercise of jurisdiction is consistent with federal and state due-process guarantees. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013).

The Texas long-arm statute broadly allows courts to exercise personal jurisdiction over a nonresident who commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE § 17.042(2). Because this statute reaches as far as the federal constitutional requirements for due process will allow, "Texas courts may exercise jurisdiction over a nonresident so long as doing so comports with federal due process limitations." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Consistent with federal due process protections, a Texas state court can exercise jurisdiction over a nonresident defendant only if (1) the defendant has established

"minimum contacts" with the state and (2) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." See – *TV Azteca v. Ruiz*, No. 14-0186 Supreme Court of Texas (2015). The GIRGARDI-KEESE Enterprise established minimum contact with the state of Texas on or about July 2, 2021, where ALLRED engaged in a commercial book deal contract or agreement with Flower Mound, Texas, resident Paxton Smith. The commercial book deal is by knowledge and belief proceeds from a pattern of racketeering conduct affecting interstate commerce. Title 18 U.S.C. 1962(a) provides that "It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Moreover, RICO Defendants COMCAST, INC., and COMCAST VENTURES, LLC., likewise are subject to the same prohibitions as ALLRED. In that for 59 years COMCAST, INC., had been in business and owns NBC News, CNBC, and MSNBC, which provides telecommunication activities affecting interstate commerce for the purpose of § 1962(a).

# FIRST CLAIM FOR RELIEF
*(Racketeering Influenced and Corrupt Organization 18 U.S.C. § 1961, 1964(c))*
**THOMAS GIRARDI; GLORIA ALLRED; NATHAN GOLDBERG; RENEE MOCHKATEL; DOLORES Y. LEAL; LISA BLOOM; JOSEPH CHORA; LEAH WILSON; GAVIN NEWSOM; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; LAUREN REEVES; ELIZABETH TAYLOR; MAHIM KHAN; CHASITY CHARNISE JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC.**

Plaintiff incorporates by reference and realleges pages 1 through 36 set forth above and Case No. BC643099 Los Angeles Superior Court – No.  BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 *Jones v. David*, BC649025 *Taylor v. David*.

Plaintiff claims that Defendants' conduct under the common purpose to defraud, and the conduct of each Defendant named above, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering" to include wire fraud or committing fraud by means of electronic transmissions over wire. The Defendants here engaged in multiple instances of wire fraud, including fraudulent electronic state court filings by wire. The federal wire fraud statute pursuant to 18 U.S.C. § 1343 makes it unlawful to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme. Defendants engaged in wire fraud by the use of telephone communications and electronic state court filing of litigation papers, each paper filed constituting a separate and distinct violation of the wire fraud statute. In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a)

provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws. Defendants are liable under each of these three sections of the statute. Further, 18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …."

# SECOND CLAIM FOR RELIEF
### *(Civil Conspiracy to Commit Fraud – Texas - (§ 15.02. Criminal Conspiracy))*
**THOMAS GIRARDI; GLORIA ALLRED; NATHAN GOLDBERG; RENEE MOCHKATEL; DOLORES Y. LEAL; LISA BLOOM; JOSEPH CHORA; LEAH WILSON; GAVIN NEWSOM; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; LAUREN REEVES; ELIZABETH TAYLOR; MAHIM KHAN; CHASITY CHARNISE JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC;.**

Plaintiff incorporates by reference and realleges pages 1 through 36 set forth above. Under Texas law "attorneys can be held liable for fraudulent conduct, such that attorney immunity does not apply to fraud or conspiracy to defraud claims. *See Toles*, 113 S.W.3d at 912; *See also Likover*, 696 S.W.2d at 472." *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-13-00620-CV, at *7 (Tex. App. Aug. 19, 2014)

At all times relevant, the Defendants agreed to and did conspire to willfully and maliciously injure Plaintiffs in its property, reputation, trade, business or profession through the fraud committed by the GIRARDI-KEESE Enterprise as described below.

Defendants, through the GIRARDI-KEESE Enterprise, have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct and the affairs of the GIRARDI-KEESE Enterprise as alleged in the preceding sections. Defendants, and each of them, conspired to commit the frauds alleged herein, in that all Defendants conspired to accomplish the Fraudulent Litigation Scheme as determined by the federal courts *supra*. Defendants had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud as alleged herein, and Plaintiffs suffered harm as a result of Defendants' conduct and conspiracy. As a direct and proximate consequence of the Defendants' conspiracy, Plaintiffs has been injured in its business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $85,045,000.00 said damages to be proven at the time of trial. Because of Defendants' violations of 18 U.S.C. § 1964(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees and any injunctive relief the court deems reasonable. Defendants' conduct as alleged in in pages 1 through 26 and incorporated herein was done in furtherance of their informal association together for a common purpose of engaging in a course of conduct as a continuing unit. Accordingly, the Plaintiffs is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

# THIRD CLAIM FOR RELIEF
### *(Antitrust CLAYTON ACT pursuant to TITLE 15 U.S.C. § 15(a))*
### TEXAS BUSINESS AND COMMERCE CODE, TITLE 2, CHAPTER 15.05
### COMCAST INC.; COMCAST VENTURES, LLC.

Plaintiff incorporates by reference and realleges pages 1 through 36 set forth above. Title 15 U.S.C. § 15(a) provides that any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent. COMCAST, INC., has a registered agent in Texas:

CT CORPORATION SYSTEM
1999 Bryan St., Ste. 900,
Dallas, TX, 75201-3136, USA

Beginning in or about the year 2020 but to the present day, COMCAST INC., and COMCAST LLC., censored FILMON LTD., or caused its censoring to prevent FILMON LTD., from exposing early on the corrupt and racketeering conduct of the GIRARDI-KEESE Enterprise. The censoring of FILMON LTD., by COMCAST INC., and COMCAST LLC., lessened competition with their telecommunications streaming brands by injury, destruction, and or preventative competition to FILMON LTD., and its subscribed customer base in the state of Texas.

**JURY DEMAND**, Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demands a trial by jury of all issues so triable that are raised herein or which hereinafter may be raised in this action.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs prays for judgment against Defendants as follows:

1. Finding that all defendants are jointly and severally liable for all damage caused to Plaintiffs;

2. Awarding Plaintiff monetary damages in an amount not less than $85,045,000.00 said amount to be proven at trial;

3. Awarding Plaintiffs enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c);

4. Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

5. Awarding Plaintiffs punitive damages in the sum of not less than $100,000,000.00 or an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper and equitable.

Respectfully Submitted,

MARK J. LIEBERMAN
Texas Bar No. 12332520
1704 Pine Hills Lane
Corinth, Texas 76210
(817) 905-3772
Mjc358@hotmail.com
*Lead attorney of record*